Patrick T. Perkins (PP 1694)
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, New York 10516
Tel: (845) 265-2820
Fax: (845) 265-2819

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE ESTATE OF JOHN TOWNES VAN ZANDT, By Its Executrix JEANENE VAN ZANDT, and JEANENE VAN ZANDT,<br><br>Plaintiffs,<br><br>v.<br><br>KEVIN EGGERS, THE EGGE COMPANY LIMITED, TOMATO RECORDS, THE TOMATO MUSIC WORKS LIMITED, TOMATO MUSIC COMPANY, LTD., NAVARRE CORPORATION, THE ORCHARD ENTERPRISES, INC. and VARESE SARABANDE RECORDS, INC.,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiffs, the Estate of John Townes Van Zandt (the "Estate"), by its Executrix Jeanene

Van Zandt, and Jeanene Van Zandt ("Jeanene") (collectively "Plaintiffs"), by their undersigned

attorneys, for their Complaint against defendants Kevin Eggers ("Eggers"), Egge Company

Limited ("Egge"), Tomato Records, The Tomato Music Works Limited ("TMW"), Tomato

Music Co. Ltd. ("TMC"), Navarre Corporation ("Navarre"), The Orchard Enterprises, Inc.

("Orchard"), and Varese Sarabande Records, Inc. ("Varese Sarabande") (collectively

"Defendants"), allege as follows:

## SUBSTANCE OF THE ACTION

1.      Plaintiffs are the Estate of the famed singer songwriter John Townes Van Zandt ("Van Zandt"), who died in 1997, and Van Zandt's former spouse, Jeanene.  Together, Plaintiffs are the owners of all copyrights in Van Zandt's music catalog and in certain of Van Zandt's performances.  In addition, the Estate (and thus, its beneficiaries), has succeeded to all of the recording agreements Van Zandt entered into during his tragically shortened career.  Van Zandt's heirs are his three children: John Townes Van Zandt II ("JT"), William Vincent Van Zandt ("Will"), and Katie Belle Van Zandt ("Katie Belle").

2.      During his life Van Zandt entered into a series of recording agreements with companies controlled by Eggers.  Since Van Zandt's death in 1997, Eggers, through his various companies, has released a slew of albums and licensed other recordings containing Van Zandt's compositions.  Eggers has repeatedly and egregiously infringed Plaintiffs' copyrights in Van Zandt's compositions, failing to obtain the "mechanical licenses" required by the Copyright Act of 1976, as amended (17 U.S.C. § 101 *et seq.*) (the "Copyright Act").  In addition, Eggers and his companies have failed to provide an accounting or pay royalties to Van Zandt's heirs under the various recording agreements, notwithstanding repeated promises to do so.

3.      This action is an attempt to obtain for Van Zandt's children their inheritance, as well as to prevent Eggers, a serial infringer, from ever again exploiting the songs, performances, or memory of Townes Van Zandt.

## THE PARTIES

4.      The Estate was probated in Tennessee.  The beneficiaries of the Estate are Van Zandt's three children: JT age 35, Will age 22, and Katie Belle age 13 (collectively the "Beneficiaries").

5.      Jeanene, a resident of Tennessee, is the former spouse of Van Zandt, the Executrix of the Estate, and the owner, by assignment, of certain of the copyrights in and to the compositions in Van Zandt's music catalog.

6.      Upon information and belief, Eggers is an individual residing within this judicial district.

7.      Upon information and belief, Egge is a Delaware corporation with a principal place of business at 27 West 24th Street, New York, New York 10011.

8.      Upon information and belief, defendant Tomato Records is a record label owned and operated by Eggers either personally or through Egge or another legal entity.

9.      Upon information and belief, TMW is a New Jersey Corporation that is located and/or does business in this judicial district.

10.     Upon information and belief, TMC is a New Jersey Corporation with a principal place of business at 20 Beekman Place, New York, New York 10011.

11.     Upon information and belief, Navarre is a Minnesota Corporation with a principal place of business at 7400 49th Avenue, New Hope, Minnesota 55428.

12.     Upon information and belief, Orchard is a Delaware corporation with a principal place of business at 100 Park Avenue, New York, New York 10017.

13.     Upon information and belief, Varese Sarabande is a California corporation with a principal place of business at 11846 Ventura Boulevard, Suite 130, Studio City, California 91604.

## JURISDICTION & VENUE

14.     The Court has jurisdiction under Section 1338(a) of the Judicial Code, 28 U.S.C.

§ 1338(a).  In addition, the Court has diversity jurisdiction under Section 1332 of the Judicial

Code, 28 U.S.C. § 1332, because the controversy is between citizens of different states and the

matter in controversy exceeds the value of $75,000, exclusive of interest and costs.  The Court

has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial

Code, 28 U.S.C. § 1367(a) and under principles of pendent jurisdiction.

15.     Venue is proper under Section 1391(b) and (c) of the Judicial Code, 28 U.S.C. §

1391(b), (c), because, upon information and belief, Defendants do business in, have substantial

contacts with and/or may be found in the Southern District of New York, and a substantial

portion of the events at issue have arisen and will arise in this judicial district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**Background**

16.     Townes Van Zandt was one of the world's most gifted songwriters who inspired

numerous artists and who arguably wrote some of the most beautiful and haunting melodies and

poetry ever recorded.  His songs have been recorded by a number of well-known artists,

including Willie Nelson, Lyle Lovett, Steve Earle, and Nora Jones.

17.     During his career, Van Zandt (either individually or through his production

company) entered into a series of recording agreements with companies either owned or

controlled by Eggers.  Specifically, Van Zandt entered into the following agreements: (i)

Agreement with Poppy Records, Inc. dated February 1, 1968 ("Agreement 1"); (ii) Agreement

with Poppy Industries, Inc. dated August 5, 1971 ("Agreement 2"); (iii) Agreement with TMC

dated September 26, 1977 ("Agreement 3"); (iv) Agreement with TMC dated June 19, 1978

("Agreement 4"); and (v) Agreement with TMW dated July 26, 1989 ("Agreement 5")

(collectively the "Recording Agreements.")

18.     Upon information and belief, Eggers and/or Egge is/are the successor(s) to all of the Recording Agreements.

19.     Van Zandt fulfilled his obligations pursuant to the Recording Agreements and provided the required sound recordings (the "Van Zandt Sound Recordings").

20.     Under the Recording Agreements, Van Zandt was to receive royalty payments at rates specified in such Agreements (the "Artist Royalties") for each sale of the Van Zandt Sound Recordings.

21.     Separate and apart from Artist Royalties, the Copyright Act required that Van Zandt also receive so-called "mechanical royalties" for each of his original compositions that appeared on any of the Van Zandt Sound Recordings.  Mechanical royalties are set by statute.

22.     During Van Zandt's lifetime, Eggers, through companies owned or controlled by him, released and re-released Van Zandt Sound Recordings.

23.     While he was alive, Van Zandt had great difficulty in receiving Artist Royalties and royalty accountings from Eggers and Eggers' companies.  In an attempt to resolve the disputes relating to Eggers' failure to pay Artist Royalties and failure to provide accountings, in or around 1990, Van Zandt and Eggers' company, TMW, entered into what the parties referred to as the "Get-Even Agreement."  Under the Get-Even Agreement, Eggers and his company agreed that, on a going-forward basis, Eggers' company would pay Artist Royalties without deducting any previous advances, recording costs, or costs of any other nature incurred in connection with the Van Zandt Sound Recordings.  In addition, Eggers' company undertook the obligation to account to Van Zandt on a semiannual basis, with statements due after the end of each accounting period.

24.     In May 1994, Van Zandt and Jeanene divorced.  As part of the divorce settlement, Van Zandt assigned to Jeanene the copyrights in a significant number of Van Zandt's songs.  Notwithstanding the divorce, Jeanene and Van Zandt maintained a close relationship.  Jeanene

was given power of attorney to act in Van Zandt's stead, which she held until his death, and Jeanene continued to handle all of Van Zandt's personal and business affairs from the time of the divorce until his death.

25.     Van Zandt's life ended on January 1, 1997 and upon his death, Jeanene and Van Zandt's oldest child, JT, were appointed co-Executors of the Estate.  Under Van Zandt's Last Will and Testament, the Beneficiaries inherited the copyrights in Van Zandt's musical compositions not owned by Jeanene, as well as the rights to the royalty income for those licensed compositions and their performances, and the copyrights in and to all of the sound recordings created by Van Zandt which were not conveyed to any third party during Van Zandt's lifetime.

26.     The Beneficiaries and Jeanene, respectively, own valid and subsisting copyright registrations for all or virtually all of Van Zandt's musical compositions (collectively the "Van Zandt Compositions").

27.     Since inheriting the copyrights in certain of the Van Zandt Compositions, the Beneficiaries have exercised their rights pursuant to Section 304 (a)(2)(A)(i) of the Copyright Act to recapture the renewal term of copyright in certain Van Zandt Compositions (the "Recaptured Compositions").

28.     The Estate was closed on November 6, 2002 and the Executors' duties were fully discharged.  However, on October 12, 2005 the Chancery Court of Wilson County, Tennessee ordered the Estate reopened and appointed Jeanene as Executrix.

**Defendants' Infringing Activities**

29.     After Van Zandt's death, Eggers, either through his own companies or through third party licensees, began flooding the market with Van Zandt Sound Recordings, while failing both to pay Artist Royalties or mechanical royalties, as well as failing to account for sales.

30.     For example, upon information and belief, in or around May 1999, Eggers, through his company, The Tomato Company, LLC, entered into an agreement (the "Charly

Agreement") with Charly Acquisitions Limited, an Irish Company("Charly"), under which Charly was granted exclusive world wide rights (excluding the United States and Canada) to certain Van Zandt Sound Recordings. Eggers, through his company, received an advance against royalties of $250,000 from Charly (the "Charly Advance"). However, the Beneficiaries have never received any portion of the Charly Advance and, despite repeated requests, neither Eggers, The Tomato Company, LLC, nor any of Eggers' other companies, has ever accounted to the Estate or to the Beneficiaries for this payment.

31.     Meanwhile, upon information and belief, since Van Zandt's death, under the Charly Agreement, Charly has either released or licensed for release no less than a dozen Van Zandt albums. As is the case with the Charly Advance, the Beneficiaries have never received any Artist Royalties for these albums or any accounting for them, and Plaintiffs have not received any mechanical royalties for the use of the Van Zandt Compositions on the Charly recordings.

32.     Eggers and his companies have also released Van Zandt Sound Recordings domestically for which they have failed to pay Artist Royalties, have failed to account, and for which they have failed to obtain the requisite mechanical licenses. Upon information and belief, in or about 2000, Eggers re-activated his label, Tomato Records, and began re-releasing Van Zandt Sound Recordings (the "Post-2000 Releases").

33.     Upon information and belief, the Post-2000 Releases include, but are not limited to the following albums:

| ALBUM | RELEASE DATE |
|---|---|
| *Best of Townes Van Zandt* | November 1, 2000 |
| *Texas Rain* | November 1, 2000 |
| *Townes Van Zandt* | March 1, 2002 |

| ALBUM | RELEASE DATE |
|---|---|
| *Townes Van Zandt – Flyin' Shoes* | March 1, 2002 |
| *Townes Van Zandt – For the Sake of the Song* | March 1, 2002 |
| *High Low & In Between* | March 1, 2002 |
| *Late Great Townes Van Zandt* | March 1, 2002 |
| *Nashville Sessions* | March 1, 2002 |
| *Our Mother the Mountain* | March 1, 2002 |
| *Live at the Old Quarter* | July 1, 2002 |
| *Tonwes Van Zandt – Delta Momma Blues* | August 1, 2003 |
| *Townes Van Zandt – Be Here to Love Me* | August 23, 2005 |

34.     Upon information and belief, the Post-2000 Releases have been and are distributed by defendants Navarre and Orchard.

35.     As with the Van Zandt Sound Recordings released pursuant to the Charly Agreement, neither Eggers nor any of the companies that he owns and controls ever paid to the Beneficiaries any Artist Royalties for the sales of the Post-2000 Releases, as prescribed under the Recording Agreements, and none of the defendants has provided any of the regular accountings required under the Get-Even Agreement.

36.     Similarly, neither Eggers nor any of the companies he owns and controls ever obtained the requisite mechanical licenses for any of the Van Zandt Compositions included on the Post-2000 Releases.

37.     In addition, certain of the Defendants have released sound recordings featuring live performances by Van Zandt not authorized either by the Recording Agreements, or any other agreements (the "Infringing Live Recordings").  The Infringing Live Recordings include, but are not limited to, the following:

| ALBUM | LABEL | RELEASE DATE |
|---|---|---|
| *Acoustic Blues* | Tomato Records | June 1, 2003 |
| *Live at McCabe's* | Varese Sarabande | November 18, 2003 |
| *Rear View Mirror, Volume 2* | Varese Sarabande | September 28, 2004 |
| *Live at Union Chapel* | Tomato Records | October 25, 2005 |
| *Townes Van Zandt: A Private Concert* | Varese Sarabande | November 15, 2005 |

38.    The Beneficiaries have applied to register each of the Infringing Live Recordings with the United States Copyright Office.

39.    Upon information and belief, *Acoustic Blues* and *Live at Union Chapel,* and/or the sound recordings contained thereon, are distributed by Navarre and Orchard.

40.    Upon information and belief, it appears that neither the Defendants nor any other person has obtained a mechanical license for use of the Van Zandt Compositions on any of the following Infringing Live Recordings: *Acoustic Blues, Rear View Mirror, Volume 2, Live at Union Chapel,* and *Townes Van Zandt, a Private Concert.*

41.    On October 25, 2004, Varese Sarabande sent a letter to the administrator of copyrights of the Van Zandt Compositions, music publisher Bug Music ("Bug"), informing it that Varese Sarabande planned on releasing a DVD containing a live performance by Van Zandt entitled *Townes Van Zandt, Houston 1988: A Private Concert* (the "Unauthorized DVD") on November 9, 2004 (in fact, according to its own web site, Varese Sarabande released the Unauthorized DVD on September 26, 2004). In its October 25, 2004 letter, Varese Sarabande requested a license to use certain Van Zandt Compositions in connection with moving images (a so-called "synch license") and proposed terms of such use. Bug submitted a counter-proposal to Varese Sarabande for license terms.

42.    On November 22, 2004, Varese Sarabande sent an e-mail to Bug proposing a compromise license rate and on December 3, 2005, sent a follow up e-mail to Bug.

43.    By e-mail dated December 10, 2004, Bug informed Varese Sarabande that there was a dispute concerning the use of Van Zandt's image and likeness on the Unauthorized DVD and that until the dispute was resolved, Bug would not issue a synch license for the requested Van Zandt Compositions.

44.    After having first requested a synch license to use the Van Zandt Compositions in the Unauthorized DVD, and after having followed-up on such request on two separate occasions, on December 10, 2004, after having been denied the licenses it had requested, Varese Sarabande took the position it did not need permission to include the Van Zandt Compositions from the copyright owners therein, but instead referred Bug to the licensor of the Unauthorized DVD— Harold Eggers, the brother of defendant Eggers.

45.    Notwithstanding that the owners of copyright in the Van Zandt Compositions denied Varese Sarabande's license request, Varese Sarabande nonetheless released the Unauthorized DVD.

46.    Upon information and belief, the Unauthorized DVD is distributed by Navarre.

47.    The Beneficiaries have applied to register the Unauthorized DVD with the United States Copyright Office.

**The Estate's Efforts To Collect Royalties**
**And Eggers' Continued Stonewalling**

48.    In early 1998, within one year of Van Zandt's death, the Estate, through its counsel, began requesting accountings from Eggers pursuant to the Recording Agreements and the Get-Even Agreement, and continued to do so for many years.  In response, Eggers engaged in a practice of feigning cooperation and promising accountings, but failing to deliver.

49.    For example, upon information and belief, in or around early 2000, Eggers wrote a letter directly to Jeanene promising to account for sales from recordings released pursuant to

the Charly Agreement by the end of 2000. This accounting never materialized and no royalties

of any kind were ever paid. Indeed, Eggers and his counsel failed to disclose to the Estate or the

Beneficiaries that Eggers had received the $250,000 Charly Advance. Plaintiffs did not discover

that Eggers had received the Charly Advance until November 6, 2003.

50.     In addition, pursuant to the terms of the Get-Even Agreement, Eggers was

required to furnish copies of any agreements licensing Van Zandt Sound Recordings. However,

Eggers refused to comply.

51.     Meanwhile, Jeanene and the Beneficiaries discovered that Eggers and his

companies failed to obtain any mechanical licenses for use of any of the Van Zandt

Compositions included in the Post-2000 Releases.

52.     In light of Eggers' failure to obtain mechanical licenses, on January 24, 2003, the

Director of Legal Affairs for Bug wrote to Eggers in care of Eggers' label, Tomato Records (the

"January 24, 2003 Bug Letter"), putting Eggers on notice of his and his company's failure to

obtain the requisite mechanical licenses for the Van Zandt Compositions included on, *inter alia,*

the Post-2000 Releases, and giving Eggers and his company 30 days to cure this failure to obtain

mechanical licenses.

53.     In response to an inquiry made by Eggers as to the disposition of copyrights in the

Van Zandt Compositions, Bug's Director of Legal Affairs wrote a second letter to Eggers on

February 7, 2003 (the "February 7, 2003 Bug Letter") setting forth in great detail the copyright

ownership of each of the Van Zandt Compositions included on the Core Albums and the Post-

2000 Releases.

54.     In reply to the February 7, 2003 Bug Letter, Eggers did not deny that he and his

company were required to obtain mechanical licenses and pay mechanical royalties, but instead

claimed he was entitled to pay less than the statutory rate on three of the Post-2000 Releases. In

a third letter dated February 20, 2003, Bug answered Eggers' questions regarding reduced

mechanical royalties and agreed that Bug would accept the reduced amount on five songs but not on the remainder.

55.    Thereafter, and to this day, Eggers and his companies have failed to seek or to obtain a mechanical license and to pay any mechanical royalties, even at the reduced rate to which they claim to be entitled.

56.    On March 26, 2003, Eggers' label Tomato Records sent to the Estate what was purported to be a royalty statement accounting for the domestic sales of Van Zandt Sound Recordings released by Tomato Records, for the period of August 1, 2001 through December 31, 2002 (the "Royalty Statement"). The Royalty Statement, which is the only semblance of an accounting provided to the Estate since Van Zandt's death in 1997, was woefully deficient and appeared to be inaccurate. On September 11, 2003, Jeanene sent a letter to Tomato Records (the "September 11, 2003 Letter") pointing out the apparent inaccuracies and requesting a full accounting.

57.    On September 19, 2003, the Estate's counsel followed up with a second letter of his own (the "September 19, 2003 Letter") demanding a complete accounting. However, a revised Royalty Statement was never sent, nor was any explanation given concerning the questions raised in Jeanene's September 11, 2003 Letter.

58.    On November 4, 2003, counsel for Eggers and TMW, wrote a letter in response to the September 19, 2003 Letter which provided no meaningful information but instead promised a substantive response at some point in the future.

59.    In the ensuing weeks, counsel for Eggers and TMW continued to represent to the Estate's counsel that he was gathering information in order to be able to respond to the Estate's concerns. However, by the end of 2003, counsel for Eggers and TMW still had not provided a substantive response to any of the Estate's and Jeanene's inquiries. In early 2004, counsel for Eggers and TMW contacted Bug to ascertain what mechanical royalties had been paid on sound

recordings containing any of the Van Zandt Compositions. By letter dated March 9, 2004, Bug provided the requested information. In a letter dated March 29, 2004, counsel for Eggers and TMW wrote to Bug acknowledging receipt of the requested mechanical licensing information and represented that they would be "in a position to respond to and discuss these issues shortly."

60. Meanwhile, in response to continued prodding from the Estate's counsel for a substantive response on all outstanding issues, on July 22, 2004, counsel for Eggers and TMW sent an e-mail to the Estate's counsel representing that "in the next week or two" they would provide a letter addressing all of the concerns set forth by the Estate and Jeanene and that such letter would include "an accounting of any artist royalties owed" and would also include "a proposal regarding the mechanical licenses and a comprehensive list of Tomato's recordings and their source of ownership."

61. Finally, on September 10, 2004—over a year and a half after the first demand by Bug—counsel for Eggers and TMW sent a substantive response (the "September 10, 2004 Eggers Letter") to the Estate's counsel's and Bug's letters. However, the September 10, 2004 Eggers Letter failed to provide the promised accounting for Artist Royalties but claimed such an accounting would be ready within three weeks of the September 10, 2004 Eggers Letter.

62. In the September 10, 2004 Eggers Letter, Eggers also purported to address the Van Zandt Sound Recordings released by Charly and its licensees. Eggers claimed that all of the Van Zandt Sound Recordings released by Charly were unauthorized and that Charly had "never" paid Tomato Records for records sold. Of course, this latter statement was blatantly false since Eggers' company received an advance of $250,000 for, *inter alia*, the rights to certain of the Van Zandt Sound Recordings.

63. With respect to mechanical royalties, Eggers' counsel claimed that they were in the process of reviewing the records provided by Bug seven months prior concerning the Van

Zandt Sound Recordings distributed by Rhino Records in the mid 1990s. Eggers' counsel admitted that no mechanical licenses had been obtained or executed for the Post-2000 Releases.

64.     Notwithstanding the promise in the September 10, 2004 Eggers Letter to provide an accounting "within three weeks," Eggers and his companies did not deliver. The Estate's counsel continued to follow up on the request for an accounting and for responses to other outstanding issues and, on December 3, 2004, received an e-mail from counsel for Eggers and TMW stating that an accounting would be delivered "in the next couple of weeks."

65.     On December 21, 2004, having not received the long-promised accounting, the Estate's counsel sent another follow-up reminder. Counsel for Eggers and TMW responded by e-mail on December 23, 2004 claiming that the accounting would be ready the first week of January 2005. After another round of follow-up communications by the Estate's counsel, counsel for Eggers and TMW sent another e-mail on March 29, 2005 promising the accounting "shortly." Again on May 12, 2005, in response to another follow up letter from the Estate's counsel, counsel for Eggers and TMW promised the accounting "shortly" and "by the end of this week" in e-mail messages.

66.     By e-mail dated June 13, 2005, counsel for Eggers and TMW promised an accounting by the beginning of the following week.

67.     On July 13, 2005, still not having received the long-promised accounting, counsel for the Estate made one last effort to amicably resolve the dispute, stating "if you do not believe that your client is going to account pursuant to its various agreements with Mr. Van Zandt, please let me know and I will quit bothering you with these repeated requests and pursue my client's other rights and remedies."

68.     Counsel for Eggers never responded and no Artist Royalties or mechanical royalties were ever paid to the Estate or the Beneficiaries, nor was an accounting ever provided.

69.    Eggers and his companies misrepresented the amounts earned by the Van Zandt Sound Recordings and concealed the status and number of master recordings in their possession. The actions of Eggers and TMW in feigning cooperation and promising accountings and payment of back royalties was engaged in with the intent of further concealing the facts from Plaintiffs and with the intent of lulling Plaintiffs into a belief that the dispute between the parties would be resolved and to induce Plaintiffs not to file suit.

### FIRST CLAIM FOR RELIEF

### COPYRIGHT INFRINGEMENT AGAINST DEFENDANTS EGGERS, EGGE, TOMATO RECORDS, NAVARRE AND ORCHARD

70.    Plaintiffs incorporate by reference paragraphs 1 through 69 as if fully set forth herein.

71.    Plaintiffs are the owners of all rights under copyright to the Van Zandt Compositions.

72.    The Van Zandt Compositions are duly registered with the United States Copyright Office, and copyright in the Van Zandt Compositions is valid and subsisting.

73.    Upon information and belief, Eggers owns and/or controls defendants Egge and Tomato Records.  Upon further information and belief, Eggers has and, at all times relevant to this action, has had, the ability to control and supervise the activities of Egge and Tomato Records.

74.    Eggers, through Tomato Records, has reproduced and distributed the Post-2000 Releases comprised entirely of Van Zandt Compositions without the authorization of the copyright owners in such Compositions, in violation of Plaintiffs' exclusive rights under copyright.

75.    The unauthorized use by Eggers, Egge, and Tomato Records of the Van Zandt Compositions contained on the Post-2000 Releases was and is knowing and willful.

76.     Upon information and belief, Navarre and Orchard have distributed and continue to distribute some or all of the Post-2000 Releases without authorization of the copyright owners of the Van Zandt Compositions, in violation of Plaintiffs' exclusive rights under copyright.

77.     As a result of such copyright infringement by Eggers, Egge, Tomato Records, Navarre, and Orchard, Plaintiffs have suffered monetary and irreparable harm.

**SECOND CLAIM FOR RELIEF**

**COPYRIGHT INFRINGEMENT AGAINST EGGERS, EGGE,
TOMATO RECORDS, VARESE SARABANDE,
NAVARRE, AND ORCHARD**

78.     Plaintiffs incorporate by reference paragraphs 1 through 77 as if fully set forth herein.

79.     Plaintiffs are the owners of all rights under copyright to the Van Zandt Compositions.

80.     The Van Zandt Compositions are duly registered with the United States Copyright Office, and copyright in the Van Zandt Compositions is valid and subsisting.

81.     The Estate is the owner of all rights under copyright in the Van Zandt Sound Recordings contained in the Infringing Live Recordings and in the live performance contained in the Unauthorized DVD.

82.     The Estate has filed applications to register copyright in the Infringing Live Recordings and the Unauthorized DVD with the United States Copyright Office and copyright in the Infringing Live Recordings and in the Unauthorized DVD is valid and subsisting.

83.     Upon information and belief, Eggers owns and/or controls Egge and Tomato Records.  Upon further information and belief, Eggers has, and at all times relevant to this action has had, the ability to control and supervise the activities of Egge and Tomato Records.

84.     Eggers, through Tomato Records, has reproduced and distributed the Infringing Live Recordings entitled *Acoustic Blues* and *Live at Union Chapel*, comprised entirely of Van

Zandt Compositions without authorization of the copyright owners of such Compositions, in violation of Plaintiffs' exclusive rights under copyright.

85.     Similarly, Eggers, Egge, and Tomato Records have reproduced and distributed the Van Zandt Sound Recordings contained on *Acoustic Blues* and *Live at Union Chapel* without authorization of the copyright owners of such sound recordings, in violation of the Estate's exclusive rights under copyright.

86.     The unauthorized use by Eggers, Egge, and Tomato Records of the Van Zandt Compositions and Van Zandt's copyrighted performance on *Acoustic Blues* and *Live at Union Chapel*, was and is knowing and willful.

87.     Upon information and belief, Navarre and Orchard have distributed and continue to distribute *Acoustic Blues* and *Live at Union Chapel* without the authorization of owners of copyright in the Van Zandt Compositions or of the Van Zandt Sound Recordings contained on the Infringing Recordings, in violation of Plaintiffs' exclusive rights under copyright.

88.     Varese Sarabande has reproduced and distributed the Infringing Live Recordings entitled *Rear View Mirror, Volume 2* and *Townes Van Zandt: A Private Concert*, comprised of Van Zandt Compositions without authorization of the owners of copyright in the Van Zandt Compositions, in violation of Plaintiffs' exclusive rights under copyright.

89.     Varese Sarabande has released and distributed the Infringing Live Recordings entitled *Rear View Mirror, Volume 2* and *Townes Van Zandt: A Private Concert* without the authorization of the owner of copyright in Van Zandt's sound recordings contained therein, in violation of the Estate's exclusive rights under copyright.

90.     Varese Sarabande has reproduced and distributed the Unauthorized DVD containing Van Zandt Compositions, without obtaining the requisite license from the owners of copyright in the Van Zandt Compositions, in violation of Plaintiffs' exclusive rights under copyright.

91.     Varese Sarabande has reproduced and distributed the Unauthorized DVD without authorization of the copyright owners of Van Zandt's performance contained therein, in violation of the Estate's exclusive rights under copyright.

92.     The unauthorized use by Varese Sarabande of the Van Zandt Compositions and Van Zandt's copyrighted performance on the Unauthorized DVD was and is knowing and willful.

93.     Upon information and belief, Navarre has distributed and continues to distribute the Unauthorized DVD without the authorization of the copyright owners of the Van Zandt Compositions or of the Van Zandt sound recordings contained on the Infringing Recordings in violation of Plaintiffs' exclusive rights under copyright.

94.     As a result of such copyright infringement by Eggers, Egge, Tomato Records, Navarre, Orchard, and Varese Sarabande, Plaintiffs have suffered monetary and irreparable harm.

### THIRD CLAIM FOR RELIEF

### BREACH OF CONTRACT
### AGAINST EGGERS, EGGE, TMW, AND TMC

95.     Plaintiffs incorporate by reference paragraphs 1 through 94 as if fully set forth herein.

96.     The Estate is the successor in interest to all of Van Zandt's and/or Van Zandt's companies' rights under the Recording Agreements and the Get-Even Agreement.

97.     Upon information and belief, Egge, TMC, and TMW are all, or have been, companies owned and/or controlled by Eggers.

98.     Upon information and belief, Eggers, Egge, TMC, and/or TMW have been or are successors in interest to the respective obligations of Poppy Records, Inc. and Poppy Industries, Inc.'s arising under Agreements 1 and 2.

99.     Upon information and belief, Eggers, Egge, and/or TMW have been or are successors in interest to TMC's obligations arising under Agreement 3 and Agreement 4.

100.    Upon information and belief, Eggers and/or Egge are the successor in interest to TMW's obligations arising under Agreement 5 and arising under the Get Even Agreement.

101.    Eggers, Egge, TMC, and TMW have breached the Recording Agreements and the Get-Even Agreement by failing to pay Artist Royalties, failing to provide regular accountings and failing to submit copies of licenses to the Estate.

102.    As a result of the breach of contract by Eggers, Egge, TMW, and TMC, Plaintiffs have suffered actual and consequential damages.

### FOURTH CLAIM FOR RELIEF

### RESCISSION OF THE RECORDING AGREEMENTS AND THE GET-EVEN AGREEMENT AGAINST EGGERS, EGGE, TMW, AND TMC

103.    Plaintiffs incorporate by reference paragraphs 1 through 102 as if fully set forth herein.

104.    Eggers, Egge, TMW, and TMC, have repeatedly failed to pay Artist Royalties pursuant to the Recording Agreements and have repeatedly failed to provide accountings and submit copies of licenses to the Estate under the terms of the Get-Even Agreement.  These actions represent material breaches of the Recording Agreements and the Get-Even Agreement, and such material breaches are willful.

105.    Because the payment of Artist Royalties, the requirement for regular accountings, and the obligation to provide copies of licenses are substantial and fundamental to the object of the parties in making the Recording Agreements and the Get-Even Agreement respectively, the repeated and consistent failure of Eggers, Egge, TMW, or TMC to pay Artist Royalties, to provide royalty accountings, or to supply copies of licenses, strongly defeat the object of the parties in entering into the Recording Agreements and the Get Even Agreement.

106.     By virtue of the conduct of Eggers, Egge, TMW, and TMC, Plaintiffs seek and are entitled to an order from this Court rescinding the Recording Agreements and the Get-Even Agreements and ordering that all rights granted to Eggers, Egge, TMW, and TMC under the Recording Agreements and the Get-Even Agreement to revert to Plaintiffs.

## FIFTH CLAIM FOR RELIEF
### VIOLATION OF TENN. CODE ANN. § 47-25-1105

107.     Plaintiffs incorporate by reference paragraphs 1 through 106 as if fully set forth herein.

108.     Defendants have knowingly used and infringed upon the use of Van Zandt's name and likeness as an item of commerce for purposes of advertising products and/or merchandise, in violation of the Estate's rights in Van Zandt's name and likeness pursuant to Tenn. Code Ann. § 47-25-1105 *et seq.*

109.     As a result of this unlawful action by Defendants, the Estate has suffered actual and consequential damages.

## SIXTH CLAIM FOR RELIEF
### VIOLATION OF TEX. PROP. CODE ANN. § 26.013

110.     Plaintiffs incorporate by reference paragraphs 1 through 109 as if fully set forth herein.

111.     Defendants have, without authorization, used the name, voice, and likeness of Van Zandt in order to sell products.

112.     As a result of this unlawful action by Defendants, the Estate has suffered actual and consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered against Defendants as follows:

1.     An order preliminarily and permanently enjoining Defendants, their employees, agents, licensees, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with any of them, including any entities controlled in whole or in part by any of the Defendants or their parents in the future, from infringing Plaintiffs' copyrights in the Van Zandt Compositions and from infringing the Estate's copyrights in any Van Zandt sound recording;

2.     An order directing Defendants to deliver to Plaintiffs all copies of any Van Zandt sound recordings (and any so-called "Masters" from which such copies were made) which make any unlawful use of any of the Van Zandt Compositions or any Van Zandt sound recording;

3.     An order to Eggers, Egge, TMW, TMC, and Tomato Records to account to the Estate for sales of any and all Van Zandt Sound Recordings sold or licensed and to supply to the Estate copies of any and all foreign licensing agreements concerning any of the Van Zandt Sound Recordings;

4.     An award of monetary relief for all unpaid Artist Royalties plus interest;

5.     An order stating that, subject to a full and final accounting for and payment of Artist Royalties the Estate, plus interest, the Recording Agreements and the Get-Even Agreement are rescinded and of no legal effect and that all right, title, and interest in and to any Van Zandt Sound Recordings created pursuant to the Recording Agreements revert to the Estate, and further directing that any and all so-called "Master Recordings" embodying or containing any Van Zandt Sound Recordings prepared pursuant to the Recording Agreements, be delivered immediately to the Estate;

6.     An award to Plaintiffs of monetary relief pursuant to 17 U.S.C. § 504 for Defendants' copyright infringement, including Plaintiffs' actual damages, Defendants' profits, and/or statutory damages;

7.     An award of punitive damages against Defendants;

8.     An order directing Defendants to file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of judgment a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with requirements of the foregoing injunction and order;

9.     An award of Plaintiffs' their costs in this civil action, including reasonable attorneys' fees and expenses; and

10.    Granting to Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: December 9, 2005

                              PERKINS LAW OFFICE, P.C.

                         By:_____
                              Patrick T. Perkins (PP 1694)
                              1711 Route 9D
                              Cold Spring, New York 10516
                              Tel: (845) 265-2820
                              Fax: (845) 265-2819

Of Counsel:

FRITZ, BYRNE,
HEAD & HARRISON, LLP
Bruce Perkins
98 San Jacinto Boulevard
Suite 2000
Austin, Texas 78701