Patrick T. Perkins (PP 1694)
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, New York 10516
Tel: (845) 265-2820
Fax: (845) 265-2819

FRITZ, BYRNE,
HEAD & HARRISON, LLP
Bruce Perkins (Admitted *pro hac vice*)
98 San Jacinto Boulevard
Suite 2000
Austin, Texas 78701

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN TOWNES VAN ZANDT II, WILLIAM VINCENT VAN ZANDT, KATIE BELLE VAN ZANDT, By Her Next Friend, JEANENE VAN ZANDT, and JEANENE VAN ZANDT,<br><br>Plaintiffs,<br><br>v.<br><br>KEVIN EGGERS, THE EGGE COMPANY LIMITED, THE TOMATO MUSIC WORKS LIMITED, TOMATO MUSIC COMPANY, LTD., NAVARRE CORPORATION, THE ORCHARD ENTERPRISES, INC., and MARY EGGERS,<br><br>Defendants. | Case No.  05 CV 10661 (RJH) |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR *EX PARTE* MOTION FOR A**
**TEMPORARY RESTRAINING ORDER AND**
**A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................i

PRELIMINARY STATEMENT ................................................................................................. 1

FACTS ......................................................................................................................................... 2

SUMMARY OF ARGUMENT ................................................................................................... 8

I.   LEGAL STANDARDS FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION. ............................................................................ 9

II.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM, THERE ARE SERIOUS QUESTIONS GOING TO THE MERITS, AND THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFFS' FAVOR. 9

   A.   BECAUSE DEFENDANTS HAVE FAILED TO OBTAIN MECHANICAL LICENSES FOR THE VAN ZANDT PHONORECORDS, SALE OF SUCH PHONORECORDS-EVEN THE MASTERS-WOULD CONSTITUTE COPYRIGHT INFRINGEMENT. ............................................................................... 9

   B.   PLAINTIFFS' CLAIM FOR RESCISSION ALSO IS LIKELY TO SUCCEED. ................................. 12

   C.   PLAINTIFFS' CLAIMS RAISE SUFFICIENTLY SERIOUS QUESTIONS GOING TO THE MERITS TO MAKE THEM A FAIR GROUND FOR LITIGATION AND THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFFS' FAVOR. .................................................................................... 13

III.   ABSENT THE ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, PLAINTIFFS WILL BE IRREPARABLY HARMED. .......... 13

**TABLE OF AUTHORITIES**

CASES

*ABCKO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60 (2d Cir. 1996) ....................................... 13

*Abdul Wali v. Coughlin*, 754 F.2d 1015 (2d Cir. 1985) ................................................................ 13

*Fink v. Friedman,* 358 N.Y.S.2d 250 (Sup. Ct. 1974) ................................................................... 12

*Fonar Corp. v. Domenick*, 105 F.3d 99 (2d Cir. 1991) ................................................................ 10

*Fruit-Ices Corp. v. CoolBrands Int'l Inc.*, 335 F. Supp. 2d 412 (S.D.N.Y. 2004) .......................... 9

*Fun-Damental Too, Ltd. v. Gemmy Industries Corp.,* 111 F.3d 993 (2d Cir. 1997) ...................... 9

*Iannucci v. The Segal Co.*, 2006 U.S. Dist LEXIS 43339 (S.D.N.Y. 2006) ............................. 9, 13

*Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) .................................................. 10

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) .......................................... 12

*Pan Am. World Airways, Inc. v. Flight Eng'rs Int'l Ass'n, PAA Chapter*, 306 F.2d 840 (2d Cir. 1962) ........................................................................................................................................ 9

*Strand Bldg. Corp. v. Russell and Saxe, Inc.,* 232 N.Y.S.2d 384 (Sup. Ct. 1962), ....................... 12

*Ulloa v. Universal Music and Video Distribution Corp.*, 303 F. Supp.2d 409 (S.D.N.Y. 2004) . 12

### STATUTES

17 U.S.C. § 101................................................................................................................................ 11
17 U.S.C. § 115 (b)(2) ..................................................................................................................... 11
17 U.S.C. § 115(b) ........................................................................................................................... 10
17 U.S.C. § 115(b)(1) ...................................................................................................................... 10
17 U.S.C. § 115(b)(2) ...................................................................................................................... 10
17 U.S.C. § 411.................................................................................................................................. 9

Plaintiffs John Townes Van Zandt II, William Vincent Van Zandt, Katie Belle Van Zandt (collectively the "Van Zandt Children") and Jeanene Van Zandt ("Jeanene") (collectively "Plaintiffs") respectfully submit this memorandum in support of their *Ex Parte* Motion for Temporary Restraining Order and for a Preliminary Injunction.

## PRELIMINARY STATEMENT

Defendants are serial copyright infringers and have consistently materially breached a series of recording agreements under which, *inter alia*, singer/songwriter Townes Van Zandt ("Van Zandt") assigned certain master recordings (the "Masters"). Since the year 2000, Defendants have released 14 separate CDs made from the Masters containing compositions by and performances of deceased singer-songwriter Townes Van Zandt ("Van Zandt"). According to Defendants' own accounting records, they have failed to pay in excess of $120,000 in artist and mechanical royalties for the period ending June 2004. Defendants have been on notice since as early as January 23, 2003 of their willful infringement but have simply ignored their obligations to the Plaintiffs. Moreover, since Van Zandt's death in 1997, Defendants and their predecessors have failed to pay artist royalties, have failed to provide proper accountings, and have flooded the market with Van Zandt recordings, all frustrating the purpose of the recording agreements.

Plaintiffs discovered on August 28, 2006 that defendant The Egge Company, Limited ("Egge") filed for bankruptcy in the Southern District of New York on August 25, 2006. (Declaration of Patrick T. Perkins, ¶ 7; Ex.1 (hereinafter "Perkins Decl. ¶ __").) As recently as July 28, 2006, Egge represented in its pleading to this Court that it was the exclusive licensee of the Masters. According to Defendants' pleading in this case, the licensor and owner of the Masters is defendant The Tomato Music Works Limited ("TMW"). While TMW and Egge are separate entities, they are clearly closely related as, for example, defendant Mary Eggers is President of both entities. It appears from Egge's bankruptcy petition that its most valuable assets – its purported exclusive licenses to exploit the Masters -- were liquidated by canceling such licenses.

Plaintiffs have a real concern that TMW also will liquidate its assets – the Masters – and file for bankruptcy. TMW was a counterclaim defendant in another action involving a music

publisher brought in the U.S. District Court for the Southern District of New York.  Pursuant to a settlement agreement in the case, TMW was required to pay $50,000 in various installments.  According to documents received in discovery, TMW failed to make a required payment, resulting in entry of a judgment for more than $40,000.  On at least one occasion, Defendants' counsel has characterized TMW as "judgment proof."  Moreover, TMW filed *no response* to Plaintiffs' Motion to Dismiss its counterclaims and its third-party complaint.  This failure to file was undoubtedly motivated out of a lack funds.

Among the causes of action brought by Plaintiffs in this case are: (1) a cause of action for declaratory judgment asking, *inter alia,* for a finding that Defendants' sale of the Masters would constitute copyright infringement and should be enjoined and (2) a cause of action for rescission requesting return of the Masters to the Van Zandt Children.  In the event TMW, or any of the Defendants, is permitted to sell the Masters during the pendency of this litigation, the equitable relief sought by Plaintiffs would likely be frustrated.  Thus, Plaintiffs seek a Temporary Restraining Order and a Preliminary Injunction ordering TMW and any of the other Defendants (except Egge so long as it is under the jurisdiction of the Bankruptcy Court), not to sell any Masters containing performance of Townes Van Zandt, thus maintaining the *status quo* during the pendency of the litigation.  Plaintiffs seek this relief *ex parte* because they are concerned that, if Defendants discover that Plaintiffs seek to enjoin sale of the Masters, Defendants will consummate such sale prior to any injunctive relief being granted.

## FACTS

**Defendants' Infringing Activities**

Together, Plaintiffs are the owners of all copyrights worldwide in Van Zandt's compositions (the "Compositions").  In addition, the Van Zandt Children are the successors to all of the recording contracts entered into by Van Zandt during his lifetime.  (Declaration of Jeanene Van Zandt ¶ 2 (hereinafter referred to as "Van Zandt Decl. ¶ __").)

Townes Van Zandt was one of the world's most gifted songwriters who inspired numerous artists and who arguably wrote some of the most beautiful and haunting melodies and poetry ever recorded.  His songs have been recorded by a number of well-known artists, including Willie Nelson, Lyle Lovett, Steve Earle, and Norah Jones.  (*Id.* ¶ 3.)

During his career, Van Zandt (either individually or through his production company) entered into a series of recording agreements with companies either owned or controlled by Eggers. Specifically, Van Zandt entered into the following agreements: (i) Agreement with Poppy Records, Inc. dated February 1, 1968 ("Agreement 1"); (ii) Agreement with Poppy Industries, Inc. dated August 5, 1971 ("Agreement 2"); (iii) Agreement with TMC dated September 26, 1977 ("Agreement 3"); (iv) Agreement with TMC June 19, 1978 ("Agreement 4"); and (v) Agreement with The Music Works Limited dated July 26, 1989 ("Agreement 5") (collectively the "Recording Agreements.") (*Id.* ¶4.)

According to Defendants' latest pleading, TMW is the owner of certain Masters containing the Compositions and performances of Van Zandt. (Perkins Ex. 2; ¶¶ 108-109.) Thus, TMW is the successor in interest to the Recording Agreements. Under the Recording Agreements, Van Zandt was to receive royalty payments at rates specified in such Agreements (the "Artist Royalties") for each sale of the Van Zandt Sound Recordings. (Van Zandt Decl. ¶ 5.)

Separate and apart from Artist Royalties, the Copyright Act required that TMW (or its licensees) obtain what are known as "mechanical licenses" for use of each of the Van Zandt Compositions that appeared on any of the Van Zandt Sound Recordings and to pay so-called "mechanical royalties" pursuant to such licenses. The mechanical royalty rate is set by statute. 17 U.S.C. § 115; Van Zandt Decl. ¶¶ 5-6.

While he was alive, Van Zandt had great difficulty in receiving Artist Royalties and royalty accountings from Eggers and Eggers' companies. In an attempt to resolve the disputes relating to Eggers' failure to pay Artist Royalties and failure to provide accountings, in or around 1990, Van Zandt and a predecessor in interest to TMW, entered into what the parties referred to as the "Get-Even Agreement." Under the Get-Even Agreement, Eggers and his company agreed that, on a going-forward basis, Eggers' company would pay Artist Royalties without deducting any previous advances, recording costs, or costs of any other nature incurred in connection with the Van Zandt Sound Recordings theretofore recorded. In addition, Eggers' company undertook the obligation to account to Van Zandt on a semiannual basis, with statements due after the end

3

of each accounting period, and to provide any foreign licenses to Van Zandt upon request. (Van Zandt Decl. ¶ 7.)

In May 1994, Van Zandt and Jeanene divorced. As part of the divorce settlement, Van Zandt assigned to Jeanene the copyrights in a significant number of Van Zandt's songs. Notwithstanding the divorce, Jeanene and Van Zandt maintained a close relationship. Jeanene was given power of attorney to act in Van Zandt's stead, which she held until his death, and Jeanene continued to handle all of Van Zandt's personal and business affairs from the time of the divorce until his death. (*Id*. ¶ 8.)

Van Zandt's life ended on January 1, 1997. Under Van Zandt's Last Will and Testament, the Van Zandt Children inherited the copyrights in Van Zandt's musical compositions not owned by Jeanene, as well as the rights to the royalty income for those licensed compositions and their performances, and the copyrights in and to all of the sound recordings created by Van Zandt which were not conveyed to any third party during Van Zandt's lifetime. (*Id*. ¶ 9.)

The Van Zandt Children and Jeanene, respectively, own valid and subsisting copyright registrations for virtually all of Van Zandt's musical compositions (collectively the "Van Zandt Compositions"). (Perkins Decl. ¶ 9; Ex. 3.)

After Van Zandt's death, TMW and/or its predecessors directly or through third party licensees, began flooding the market with Van Zandt Sound Recordings, while failing both to pay Artist Royalties and to obtain copyright licenses for use of Van Zandt's compositions, as well as failing to account for sales. (Van Zandt Decl. ¶ 10.)

This practice continued after 2000. TMW and/or its licensee(s) have released Van Zandt Sound Recordings (made from the Masters) (the "Infringing Phonorecords") domestically for which they have failed to pay Artist Royalties, have failed to account, and for which they either have failed to obtain the requisite mechanical licenses or have failed to pay mechanical royalties. (*Id.* ¶ 11.)

The Infringing Recordings include, but are not limited to the following albums:

| ALBUM | RELEASE DATE |
|---|---|
| *Best of Townes Van Zandt* | November 1, 2000 |
| *Texas Rain* | November 1, 2000 |
| *Townes Van Zandt* | March 1, 2002 |
| *Townes Van Zandt – Flyin' Shoes* | March 1, 2002 |
| *Townes Van Zandt – For the Sake of the Song* | March 1, 2002 |
| *High Low & In Between* | March 1, 2002 |
| *Late Great Townes Van Zandt* | March 1, 2002 |
| *Nashville Sessions* | March 1, 2002 |
| *Our Mother the Mountain* | March 1, 2002 |
| *Live at the Old Quarter* | July 1, 2002 |
| *Acoustic Blue* | June 1, 2003 |
| *Townes Van Zandt – Delta Momma Blues* | August 1, 2003 |
| *Townes Van Zandt – Be Here to Love Me* | August 23, 2005 |
| *Live at Union Chapel* | October 25, 2005 |

In or around December 2004, Egge was formed and became the exclusive licensee to, *inter alia*, certain Van Zandt Sound Recordings. The licensor was TMW. Notwithstanding the formation of a new corporate entity, the management personnel of Egge remained largely the same as that of its licensee, TMW.

Since Van Zandt's death in 1997, neither TMW, any of its predecessors, nor Egge, have paid any artist royalties or provided any accountings. Moreover, since at least as early as 2000, neither TMW nor any of its licensees has paid any mechanical royalties. In addition, for the vast majority of the Infringing Phonorecords, neither TMW nor Egge ever obtained any mechanical licenses. (*Id.* ¶ 11.)

On January 24, 2003, Kyle Staggs ("Staggs") from Bug Music, Inc. ("Bug"), the administrator of the Van Zandt song catalog, sent a letter to TMW's label, Tomato Records,

5

putting TMW on notice that it had failed to obtain any mechanical licenses for any of the Compositions contained on twelve of the Infringing Phonorecords and giving TMW thirty days to cure the infringements.  (Van Zandt ¶ 12; Ex. 1.)

In ensuing discussions between Staggs and TMW principal, Defendant Kevin Eggers, the latter acknowledged that he had failed to obtain mechanical licenses for the twelve Infringing Phonorecords, but claimed that he was entitled a reduced rate for three of them (an assertion that was incorrect).  In an e-mail to Staggs dated February 12, 2003, Eggers wrote "[w]e shall sign and return all new mechanical licenses that have been submitted to us by the Fox office which we presume have been approved by your office with the exception of the three albums noted above."  (Van Zandt Ex. 2.)  Notwithstanding Eggers' representation, virtually no mechanical licenses were entered into or no mechanical royalties paid for any of the Infringing Phonorecords, even for those that Eggers did not dispute were governed by the higher royalty rate.  (Van Zandt Decl. ¶ 13.)

Meanwhile, on March 26, 2003, an employee of TMW sent Jeanene what purported to be an accounting (the "Accounting") of artist royalties for the Infringing Phonorecords.  (Van Zandt Decl. ¶ 14; Ex. 3.)  The Accounting was woefully deficient as it covered only five of the twelve Infringing Phonorecords that had been released by TMW.  On September 11, 2003, Jeanene wrote a letter to defendant Mary Eggers ("Ms. Eggers") at TMW demanding a full accounting, reminding Ms. Eggers that no mechanical licenses had been obtained for any of the Infringing Phonorecords, and demanding that TMW "cease and desist" its unlawful activity.  (Van Zandt Decl. ¶ 15; Ex. 4.)

For nearly two years thereafter, TMW feigned negotiating a settlement of its failure to obtain mechanical licenses and to pay mechanical and artist royalties and for months promised to provide Jeanene with an accounting of its sales.  However, no mechanical licenses were ever entered into and no artist or mechanical royalties were ever paid.  Meanwhile, Counterclaimants continued to release Infringing Phonorecords, all in violation of Plaintiffs' rights.[1]  (Van Zandt Decl. ¶ 16.)

---

[1] After Plaintiffs filed this action, Egge finally provided the long awaited accounting. (Van Zandt Decl. ¶ 18; Ex. 5.)  According to Egge's accounting, which only covers the period 2000 through June 2004, the Estate is owed artist royalties totaling no less than $32,033.98.  In

6

**This Lawsuit**

As a result of Defendants' continued infringing behavior, including but not limited to, their ongoing sale of the Infringing Phonorecords without paying any royalties, on December 20, 2005, Plaintiffs commenced this action, asserting, *inter alia,* claims for copyright infringement, seeking, *inter alia*, an order enjoining Defendants from further exploiting the Infringing Phonorecords, and for rescission of the Recording Agreements and a return of all of the Van Zandt Masters. On July 14, 2006, Plaintiffs served their Second Amended Complaint ("SAC"). In that pleading, which is the operative pleading, in addition to their claims for copyright infringement and rescission, Plaintiffs also asserted a claim requesting a declaration that any sale of any of the Van Zandt Masters would constitute copyright infringement and thus should be enjoined. (Perkins Ex. 7, ¶¶ 82-88.)

Defendants Egge and TMW asserted eight counterclaims against Plaintiffs. After Plaintiffs moved to dismiss the counterclaims, on July 28, 2006 Egge and TMW served and filed amended counterclaims (the "Amended Counterclaims") dropping all but one of the prior counterclaims.[2] In the Amended Counterclaims, TMW alleges, *inter alia*, that it is the owner of copyright in and to certain Van Zandt Van Zandt Masters. (Perkins Ex. 2, ¶ 108.) In addition Egge alleges that it is the "exclusive licensee of the copyright" in such Masters. (*Id.* ¶ 109.)

**Judgment Against TMW In Another Action**

On November 29, 2005, TMW entered into an agreement (the "Settlement Agreement") settling an unrelated action pending in the District captioned *The Tomato Music Works Ltd. v. Capitol Records, Inc. d/b/a EMI Music North America*, 04 cv 03164 (RCC). Pursuant to the settlement agreement, TMW paid $25,000 upon signing and was to pay twelve (12) monthly

---

addition, based upon Egge's own sales numbers, through June 2004, Egge should have paid no less than $88,054.69 in mechanical royalties. (Perkins Decl. ¶ 9; Ex. 4.) Thus, for the period 2000 up to June 2004, Egge owes the Plaintiffs no less than $88,054.67 in mechanical royalties which, added to the outstanding artist royalties, totals $120,088.67 which total does not even take into account Egge's sales for the period June 2004 to the present. Nor does the Egge document account for sales of individual Compositions by digital download through Orchard. (Van Zandt Ex. 5.)

[2] Plaintiffs' Motion the Dismiss the Amended Counterclaims and the Third Party Complaint or, in the Alternative, for Summary Judgment was filed on August 4, 2006. Egge and TMW filed no response to the motion.

7

installments of $2,083.33. As part of the Settlement Agreement, TMW signed a confession of judgment under which the balance remaining on the settlement would be doubled in the event TMW missed a payment. (Perkins Ex. 5.)

On March 17, 2006, counsel for the defendants in that action wrote to Judge Casey, asking that he enter judgment against TMW in the amount of $45,833.34. According to defendant's letter to Judge Casey, TMW paid the first installment but failed to any remaining installments. On March 28, 2006, the Court entered judgment against TMW. (Perkins Ex. 6.)

**Egge's Bankruptcy**

On August 24, 2006, Egge filed for bankruptcy under Chapter 7 of the Bankruptcy Code. In its petition, Egge claims to have less than $50,000 in assets. In its schedule of personal property, Egge lists "various licenses terminated" and that such licenses have no value. (Perkins Ex. 1.) Thus, at some point between July 28, 2006 and August 24, 2006, Egge liquidated arguably its most important assets – its licenses associated with the Van Zandt Sound Recordings.

## SUMMARY OF ARGUMENT

In this action, Plaintiffs seek, *inter alia*, the following equitable relief: (1) an order enjoining any of the Defendants from selling or otherwise disposing of any of the Masters of the Van Zandt Sound Recordings, and (2) an order rescinding the Recording Agreements and the Get-Even Agreement and requiring that the Masters be returned to the Van Zandt Children. (Perkins Ex. 7, Prayer for Relief, ¶¶ 1-2.) Because Egge has liquidated its assets prior to filing for bankruptcy, and because TMW also appears to have significant financial difficulty, Plaintiffs have a legitimate concern that TMW will sell the Masters and then also file for bankruptcy. Such an action would frustrate Plaintiffs' attempt to obtain equitable relief – one of the main purposes for this suit. In other words, absent an order maintaining the *status quo*, Plaintiffs' causes of action for the stated equitable relief would likely be mooted, causing irreparable harm to Plaintiffs.

Meanwhile, Plaintiffs are likely to succeed on the merits. There is no dispute that Defendants have failed to obtain mechanical licenses for the bulk of the Infringing Phonorecords, that they have failed to pay any mechanical royalties, and that they have failed to pay artist

8

royalties or to account to the Van Zandt Children.  As a result, this application for a Temporary Restraining Order and a Preliminary Injunction should be granted.

## I. LEGAL STANDARDS FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION.

"Federal Rule of Civil Procedure 65(b) allows a litigant to petition a court for the issuance of a temporary restraining order against a party whose imminent conduct will cause an immediate and irreparable injury, loss, or damage to the movant." *Iannucci v. The Segal Co.*, 2006 U.S. Dist LEXIS 43339 at *8-9 (S.D.N.Y. 2006).  As the Second Circuit has held "[t]he purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Pan Am. World Airways, Inc. v. Flight Eng'rs Int'l Ass'n, PAA Chapter*, 306 F.2d 840, 842-843 (2d Cir. 1962).  "A court's determination whether the grant of a temporary restraining order is proper is the same as that used in determining the propriety of issuing a preliminary injunction." *Iannucci*, 2006 U.S. Dist LEXIS 43339 at *9 (citation omitted).

In order to obtain a preliminary injunction (and thus a temporary restraining order), the movant "must show (1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief." *Fruit-Ices Corp. v. CoolBrands Int'l Inc.*, 335 F. Supp. 2d 412, 418 (S.D.N.Y. 2004) *citing Fun-Damental Too, Ltd. v. Gemmy Industries Corp.,* 111 F.3d 993, 998-99 (2d Cir. 1997).

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM, THERE ARE SERIOUS QUESTIONS GOING TO THE MERITS, AND THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFFS' FAVOR.

### A. Because Defendants Have Failed To Obtain Mechanical Licenses For The Van Zandt Phonorecords, Sale Of Such Phonorecords-Even The Masters-Would Constitute Copyright Infringement.

In order to bring an action for copyright infringement, a plaintiff must own or have applied for a copyright registration.  17 U.S.C. § 411.  "In asserting a claim of copyright infringement, the plaintiff must show (i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir.

9

2003) (internal citations omitted).  A copyright registration constitutes *prima facie* evidence of ownership of a valid copyright.  *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1991).

The gravamen of Plaintiffs' copyright claims is Defendants' failure to obtain mechanical licenses and to pay mechanical royalties.  (Perkins Ex. 7, ¶¶ 73-88.)  Section 115 of the Copyright Act governs the issuance of mechanical licenses and provides for two different methods for obtaining mechanical licenses.  The first is to obtain a "compulsory license."  17 U.S.C. § 115(b).  A record company may obtain a compulsory license without the consent of the copyright owner by following the procedure set out in the statute.  17 U.S.C. § 115(b)(1).  However, failure to file a notice of intention to obtain a compulsory license before distributing the records "forecloses the possibility of a compulsory license and, in the absence of a negotiated license, renders the making and distribution of phonorecords actionable as acts of infringement…."  17 U.S.C. § 115(b)(2).  The second method of obtaining a mechanical license is by direct negotiation between the record company the owner of copyright in the compositions included on the sound recording.  *See id.*

Plaintiffs meet all of the requirements to prevail on their copyright claims.  First, Plaintiffs own copyright registrations for nearly every Composition included on any of the Infringing Recordings.  (Perkins Ex. 3.)  Second, Defendants have obtained virtually no mechanical licenses, if any, for any of the Compositions included on any of the Infringing Recordings.  (Perkins Decl. ¶ 14.)

There is no dispute that none of the Defendants has obtained a compulsory license pursuant to Section 115(b) of the Copyright Act.  (Van Zandt Decl. ¶ 11.)  Similarly, between 2000 and January 24, 2003, the date Staggs sent the first letter to TMW putting it on notice of a failure to obtain mechanical licenses, TMW had obtained mechanical licenses for 11 songs on one album in 2002, but never paid any mechanical royalties.  (Perkins Decl. ¶ 14.)  Staggs' January 24, 2003 letter served to terminate those mechanical licenses.  (Van Zandt Ex. 1.)

After receiving Staggs' January 24, 2003 letter, TMW executed mechanical licenses (the "2003 Licenses") for another 20 songs.  (Perkins Decl. ¶ 14.)  However, TMW paid no royalties

10

due under the 2003 Licenses.  (Van Zandt Decl. ¶ 11.)  Moreover, on September 10, 2004, TMW's counsel stated that no mechanical licenses had been obtained for the Post-2000 Releases, apparently repudiating the few mechanical licenses that had been signed.  (Van Zandt ¶ 18, Ex. 6 at 6.)  Even counting the 2003 Licenses, in releasing the 14 Infringing Recordings, Defendants have failed to obtain mechanical licenses for approximately 170 Compositions.  (Perkins Decl. ¶ 14; *see also* Perkins Ex. 3.)

As set forth in Section 115 of the Copyright Act, the distribution of phonorecords without a mechanical license gives rise to a claim of infringement under Section 501 of the Copyright Act and such claims are "fully subject to the remedies provided in sections 502 through 506 and 509."  17 U.S.C. § 115 (b)(2).  Importantly, the Copyright Act states that "**[t]he term 'phonorecords' includes the material object in which the sounds are first fixed.**"  17 U.S.C. § 101.  (Emphasis added.)  In other words, Masters are "phonorecords" for purposes of the Copyright Act.

Section 502 of the Copyright Act provides that a successful plaintiff may obtain an injunction of the copyright infringement.  In this case, distribution of any of the Infringing Recordings, *including the Masters in which the sounds were "first fixed,"* constitutes copyright infringement and should be enjoined.

In the Second Amended Complaint, Plaintiffs assert two copyright claims and, for both such claims, seek an injunction of all infringement, including but not limited to distribution (sale) of any of the Masters.  (Perkins Ex. 7, Prayer for Relief ¶ 1.)

Because Plaintiffs own valid copyrights and because Defendants, including TMW, have infringed Plaintiffs' copyrights by failing to obtain mechanical licenses, Plaintiffs are likely to succeed on their copyright claims.

### B.     Plaintiffs' Claim For Rescission Also Is Likely To Succeed.

Under New York law, rescission of a contract is available where an opponent has "breached a 'material' aspect of the contract." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 895 (2d Cir. 1976), *citing, Fink v. Friedman,* 358 N.Y.S.25 250 (Sup. Ct. 1974); *Strand Bldg. Corp. v. Russell and Saxe, Inc.,* 232 N.Y.S.2d 384 (Sup. Ct. 1962), *aff'd*, 240 N.Y.S.2d 948 (1963). "A 'material' breach has been defined as one which would justify the other party to suspend his own performance…or a breach which is so substantial as to defeat the purpose the entire transaction." *Lipsky*, 551 F.2d at 895 (citations omitted). *See also Ulloa v. Universal Music and Video Distribution Corp.*, 303 F. Supp.2d 409, 417 (S.D.N.Y. 2004) (contract rescinded).

Defendants and their predecessors have repeatedly failed to pay Artist Royalties pursuant to the Recording Agreements, have repeatedly failed to provide accountings and submit copies of licenses to the Van Zandt Children under the terms of the Get-Even Agreement, and have repeatedly failed to obtain mechanical licenses and to pay mechanical royalties. Moreover, Defendants have flooded the market with Van Zandt Recordings without regard for, and thus damaging, the value of such Recordings. These actions represent material breaches of the Recording Agreements and the Get-Even Agreement, and such material breaches are willful.

There can be no dispute that the payment of Artist Royalties, the requirement for regular accountings, the obligation to provide copies of licenses, and payment of mechanical royalties are substantial and fundamental to the object of the parties in making the Recording Agreements and the Get-Even Agreement respectively. Indeed, common sense dictates that Van Zandt *never* would have entered into any of the Recording Agreements or into the Get-Even Agreement if he had known that he would receive neither Artist Royalties nor Mechanical Royalties, and that he would not receive regular and accurate accountings of sales. Defendants' repeated and consistent failure to perform, strongly defeats the object of the parties in entering into the Recording Agreements and the Get Even Agreement. Thus, the Van Zandt Children are likely to succeed on their claim for rescission.

### C. Plaintiffs' Claims Raise Sufficiently Serious Questions Going To The Merits To Make Them A Fair Ground For Litigation And The Balance Of Hardships Tips Decidedly In Plaintiffs' Favor.

In order to establish that its claims raise sufficiently serious questions going to the merits "a movant 'need not show that the success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent.'" *Iannucci*, 2006 U.S. Dist. LEXIS 43339 at *13 (citation omitted). In fact, "[t]here may remain considerable room for doubt." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985).

As established above, Defendant's wrongdoing in this case is undisputed. They have almost no mechanical licenses, have paid no mechanical or artist royalties, and have failed to account. While Plaintiffs believe that success on these claims is assured, there can be no doubt that the probability of prevailing is better than fifty percent.

As for the balance of hardships, they tip decidedly in favor of the Plaintiffs. By this injunction, Plaintiffs seek only to maintain the *status quo*. To allow TMW to sell the Masters in order to go into bankruptcy with no assets would likely moot Plaintiffs' claims for injunctive relief, a center piece of Plaintiffs' action. On the other hand, were TMW enjoined from selling the Masters, TMW would not be damaged. Indeed, if it determined that bankruptcy is necessary, whether or not the injunction is in place, TMW would be free to file.

### III. ABSENT THE ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, PLAINTIFFS WILL BE IRREPARABLY HARMED.

In a copyright action, if a plaintiff demonstrates a likelihood of success on the merits, "irreparable harm may be presumed." *ABCKO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir. 1996) (citations omitted). As set forth above, because Plaintiffs have demonstrated a likelihood of success on the merits, irreparable harm should be presumed.

Moreover, irreparable harm in this case is obvious. Because Plaintiffs' copyright and rescission claims seek equitable relief with respect to distribution of the Masters, were TMW permitted to sell the Masters, Plaintiffs' claims would likely be mooted. In addition, it is becoming clear that the primary infringing defendants in this case may be "judgment proof" and,

13

at least in Egge's case, are shielding themselves in bankruptcy. As a result, the significant monetary damages to which Plaintiffs are likely to be entitled may be difficult to collect from insolvent defendants. Thus, the only assets of any value in this case are the Masters.

## CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that at Temporary Restraining Order and Preliminary Injunction be entered enjoining all Defendants (except Egge so long as it is under the jurisdiction of the Bankruptcy Court) and any of their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order, from selling or otherwise encumbering any Masters containing performances by Van Zandt.

August 31, 2006                                        PERKINS LAW OFFICE, P.C


                                                       By:__/s/Patrick T. Perkins_____
                                                            Patrick T. Perkins  (PP 1694)
                                                       866 United Nations Plaza
                                                       New York, NY 10017
                                                       tel:  (212) 813-5900
                                                       fax:  (212) 813-5901

                                                       FRITZ, BYRNE,
                                                       HEAD & HARRISON, LLP
                                                       Bruce Perkins (Admitted *pro hac vice*)
                                                       98 San Jacinto Boulevard
                                                       Suite 2000
                                                       Austin, Texas 78701

                                                       *Attorneys for Plaintiff*